IN THE MATTER OF: HANNAH F. ELLIS, Juvenile, and ADDISON S. ELLIS, Juvenile

No. COA98-1468

(Filed 19 October 1999)

**Child Abuse and Neglect— death of older sibling—removal of other children not required**

> The trial court did not err in failing to find by clear and convincing evidence that the two juveniles are abused or neglected children based on the conflicting evidence concerning the death of their older sibling since N.C.G.S. § 7A-517 does not require the removal of all other children from the home, the trial court has discretion in determining the weight to be given such evidence because it is in á superior position to observe and determine the credibility of the witnesses, and the environment in which the two juveniles live has been closely monitored by DSS.

Appeal by petitioner Department of Social Services from judgment entered 5 October 1998 by Judge Larry J. Wilson in Lincoln County District Court. Heard in the Court of Appeals 17 August 1999.

Maria Chantae Ellis (Chantae) was born to Robert Ellis and his wife, Shirley M. Ellis, on 20 May 1991. During 1996, Chantae resided primarily in the home of her grandmother, Debra Maners, and was cared for by both her grandmother and her mother, Shirley Ellis. Chantae died on 2 April 1996 at Lincoln Medical Center, and her body was transferred to Wake Forest University School of Medicine for an autopsy. On 29 April 1996, the Lincoln County Department of Social

Services (DSS) received a report stating that Chantae died as a result of being given Verapamil, an adult blood pressure medication. DSS then filed a juvenile petition on 1 May 1996 in which it alleged that Hannah S. Ellis (Hannah), a younger sibling of Chantae, was an abused and neglected juvenile. Pursuant to a non-secure custody order, Hannah was placed in a foster home. However, at a hearing on 6 May 1996, the trial court determined that there was no evidence showing that Hannah would be in danger if she were allowed to live with Shirley Ellis pending a hearing on the merits of the juvenile petition, and the court allowed Hannah to return to her mother's home. The adjudicatory hearing was continued from time to time, and the trial court allowed a motion to add Debra Maners, the grandmother of the child, as a caregiver of Hannah. On 7 January 1997, the parties entered into a consent order whereby Hannah would continue to reside with her mother, with DSS to monitor the placement in the mother's home. On 23 June 1997, the terms of the consent order were continued in effect.

A female child, Addison Shea Ellis (Addison), was born to Shirley and Robert Ellis on 22 December 1997. Two months later, on 20 February 1998, DSS filed a juvenile petition alleging that Hannah and Addison were abused and neglected children because their parents had not properly cared for them and because of concerns about the suspicious nature of the death of their older sibling, Chantae. On 25 February 1998 DSS filed an amended juvenile petition containing an additional allegation that the Office of the Chief Medical Examiner in Chapel Hill had ruled that the death of Chantae was a homicide. Both Hannah and Addison were placed in the custody of DSS pursuant to a non-secure custody order.

At a hearing to determine the necessity of the non-secure custody order, the trial court determined that there was no need for the order and returned the children to the home of their parents. An adjudicatory hearing was held during the week of 6 July 1998. At the close of the evidence, the trial court found that the children were neither abused nor neglected, and dismissed the juvenile petitions. Petitioner appealed.

*The Jonas Law Firm, P.L.L.C., by Rebecca J. Pomeroy and W. Todd Pomeroy, for Lincoln County Department of Social Services, petitioner appellant.*

*Lewis & Shuford, P.A., by Robert C. Lewis, for Robert and Shirley Ellis, respondent appellees.*

HORTON, Judge.

Petitioner contends that the trial court erred in failing to find by clear and convincing evidence that the juveniles were neglected or abused. The heart of petitioner's argument is that the juveniles' sibling, Chantae, died on 2 April 1996 as an alleged result of Munchausen Syndrome by Proxy (MSP) perpetrated by either her mother, respondent Shirley M. Ellis, or her grandmother, respondent Debra Maners. MSP is defined as "a psychiatric disorder in which the parent causes or fabricates a child's illness." *In re Jessica Z.*, 135 Misc. 2d 520, 521, 515 N.Y.S.2d 370, 371 (Fam. Ct. 1987). Because of the psychiatric disorder, the parent or caretaker treats the child for illnesses the child does not have by fabricating symptoms and giving the child inappropriate medicine, or by engaging in actions which cause the child to become ill. Petitioner alleged that the surviving juveniles, Hannah and Addison, were at risk due to their continued medical problems, the failure of their parents to secure proper medical assistance for them, and the mother's continued misstatements to DSS.

Under our Juvenile Code, a neglected juvenile is defined as

[a] juvenile who does not receive proper care, supervision, or discipline from the juvenile's parent, guardian, custodian, or caretaker . . . or who is not provided necessary medical care . . . or who lives in an environment injurious to the juvenile's welfare . . . . In determining whether a juvenile is a neglected juvenile, it is relevant whether that juvenile lives in a home where another juvenile has died as a result of abuse or neglect or lives in a home where another juvenile has been subjected to . . . abuse or neglect by an adult who regularly lives in the home.

N.C. Gen. Stat. § 7A-517(21) (1995). An abused juvenile is defined as

[a]ny juvenile less than 18 years of age whose parent, guardian, custodian, or caretaker:

a. Inflicts or allows to be inflicted upon the juvenile a serious physical injury by other than accidental means . . . .

N.C. Gen. Stat. § 7A-517(1) (Cum. Supp. 1997). Whether a child is neglected or abused is a conclusion of law. *See In Re Helms*, 127 N.C. App. 505, 510, 491 S.E.2d 672, 675-76 (1997). The trial court must make sufficient findings of fact to support its conclusions. *See In re Montgomery*, 311 N.C. 101, 111, 316 S.E.2d 246, 253 (1984). Furthermore, the evidence presented must be clear and convincing in

order to sustain such a finding. N.C. Gen. Stat. § 7A-635 (Cum. Supp. 1997).

Where the trial court sits without a jury, the facts found by the trial court are binding on appeal so long as they are supported by competent evidence. *Helms*, 127 N.C. App. at 511, 491 S.E.2d at 676. In this case the trial court made the following findings of fact:

A. That there exist[s] clear and convincing evidence that [Maria Chantae] Ellis died of Verapamil toxicity. There is not clear and convincing evidence at whose hands she died.

B. That the family has expressed its lack of belief in the medical professionals, some of which are not from this community but are well regarded and well qualified. The court has no problem in accepting the conclusion of these professionals as to the death of Chantae Ellis. The court joins with the medical professionals in sharing a concern for the younger children, Hannah and Addison. Although, not necessarily for all the same reasons.

C. That judging from the impact on this family, it doesn't appear to this court that these two children are going to ever be able to remove themselves from the shadow of Chantae's death at least as far as the family's concerned.

D. That the law is clear regarding the fact that the existence of abuse of a sibling is the basis for a finding of neglect of other siblings. However, the crucial difference in this case is that all of the cases and references to the abuse of another sibling deal with the abuse of a sibling in the home where the other sibling is living. To the extent that anyone would find abuse of Chantae Mari[a], it is clear from the evidence that the abuse occurred in the home of Mr. and Mrs. Maners. There may be a dispute as to what extent Mrs. Ellis was involved in the care of Mari[a] Chantae Ellis. Uncontroverted though is that the child lived with Mr. and Mrs. Maners. The other children live with Mr. and Mrs. Ellis.

E. That based on the statements of the professionals and care givers for Hannah and Addison while they have had some illnesses and understandably for the last two years they have been monitored or watched, nevertheless, they appear to be much healthier children than [Maria Chantae].

F. That the court has concerns about the minor children and yet has to weigh those concerns about the children against the paramount rights of their parents to raise their children under their care and custody against evidence that they are failing to care for and protect their children. The court does not find clear and convincing evidence to warrant neglect against Hannah and Addison Ellis and fails to find neglect as to Hannah and Addison Ellis.

Neither party took exception to any of these findings. The trial court concluded as a matter of law that based on the findings of fact "there was insufficient evidence to support a finding of neglect or abuse as regards Hannah Ellis or Addison Ellis" and dismissed the juvenile petition. Petitioner contends that the trial court's conclusion was erroneous. After careful consideration, we affirm the judgment of the trial court.

While the situation in which one sibling is killed or seriously injured is extremely troubling both to the trial courts and this Court, we have held that

[the statute] does not require the removal of all other children from the home once a child has either died or been subjected to sexual or severe physical abuse. Rather, the statute affords the trial judge some discretion in determining the weight to be given such evidence.

*In re Nicholson & Ford*, 114 N.C. App. 91, 94, 440 S.E.2d 852, 854 (1994). In *Nicholson*, we upheld the lower court's decision to find neglect as to one sibling while dismissing the DSS petition as to the other sibling. The trial court in *Nicholson* considered both the death of a prior child and the risk of like harm to the remaining children in light of their respective ages. *Id.* at 93, 440 S.E.2d at 853. In this case, the order entered by the trial court shows that the able trial judge carefully weighed all of the evidence in the case, and determined that it was insufficient to prove neglect by the applicable clear and convincing standard.

We are particularly mindful of the fact that the environment in which Hannah and Addison live has been closely monitored by DSS from May of 1996 until July of 1998. Thus, the trial court had ample evidence regarding the efforts made by both the parents and DSS to provide a safe and caring environment in which to raise Hannah and Addison. While we understand the petitioner's concern that the satisfactory care provided Hannah and Addison by their parents may have

resulted in part from the continued supervision by petitioner, there is no competent evidence that the care provided the children will become inadequate once the petitioner is no longer involved with this family.

Although the petitioner introduced evidence tending to show that either Chantae's mother or grandmother administered the drug which caused the child's death, other competent evidence supports a contrary finding. The evidence was in sharp conflict, and the trial court found that there "is not clear and convincing evidence at whose hands [Chantae] died." The trial court's findings reflect that it struggled to assess the evidence and determine the risk of future harm to these children, but found inadequate evidence to support a conclusion of abuse or neglect. We recognize that the trial court is in a superior position to observe the parties and witnesses, determine their credibility, and determine the weight to give the credible evidence. All parties were ably represented in this matter. We have carefully studied the arguments and contentions of counsel and carefully reviewed the voluminous transcript in this matter. Having done so, we cannot say as a matter of law that the trial court erred in failing to find by clear and convincing evidence that Hannah and Addison are abused or neglected children.

Affirmed.

Judges GREENE and TIMMONS-GOODSON concur.