IN THE MATTER OF: H.N.D.

No. COA10-291

(Filed 20 July 2010)

**Child Abuse, Dependency, or Neglect— neglect—no finding of risk of injury**

The trial court's findings of fact did not support its conclusion that a child was neglected where the evidence was capable of more than one inference and the court did not make a finding regarding the substantial risk of impairment. To sustain an adjudication of neglect, the alleged conditions must cause the juvenile some physical, mental, or emotional impairment, or create a substantial risk of such impairment.

Judge WYNN dissenting.

Appeal by respondent mother from adjudication and disposition orders entered 25 November 2009, *nunc pro tunc* 29 October 2009, by Judge Carol A. Jones-Wilson in Sampson County District Court. Heard in the Court of Appeals 28 June 2010.

*Warrick, Railey, and Bradshaw, P.A., by Frank L. Bradshaw, for petitioner-appellee Sampson County Department of Social Services.*

*Ryan McKaig, for respondent-appellant mother. Pamela Newell, for Guardian Ad Litem.*

**IN RE H.N.D.**

[205 N.C. App. 702 (2010)]

ELMORE, Judge.

Respondent mother appeals from orders adjudicating H.N.D. a neglected juvenile. We reverse and remand.

On 31 August 2009, the Sampson County Department of Social Services (DSS) filed a petition alleging that H.N.D. was a neglected juvenile. DSS alleged that on 30 August 2009, H.N.D.'s seventeen-month-old sibling

> drowned while under the care and supervision of Katherine and Travis Highsmith. [H.N.D.] has also been in the care of the Highsmith's [sic] for the past three to four weeks. The Highsmith's [sic] are of no relation to [H.N.D.]

> [DSS] has received 4 calls since 2006 regarding the Highsmith's [sic] lack of supervision of their own children. One assessment included an account of one of the children being hit by a car while chasing his younger brother who had run into the road in front of the house. That report alleged that one of the children was lying in the middle of the road and had to be removed by an unrelated adult. The family was last investigated in 2009 and a substantiation of neglect was made. DSS In-Home Services were provided to the family subsequent to the substantiation of neglect. Our agency received another call of inappropriate supervision while DSS was attempting to provide In-Home Services to the family. [Respondent] was present during a home visit to the Highsmith home during DSS['s] recent involvement and she was aware of the supervision issues. [Respondent] continued to allow [H.N.D.] to live there and [H.N.D.'s sibling] to spend a lot of time under the Highsmith's [sic] care.

> [Respondent] admits to needing to get her life together. She has recently moved into a new place and does not have a crib for [H.N.D.] She admits to drug use and collaterals accuse her of using cocaine. Her boyfriend was arrested by officers due to a near brawl at the emergency room on August 30th. To place a child with [respondent] until her situation can be investigated would be injurious to the welfare of this two month old.

DSS obtained custody of H.N.D. by nonsecure custody order.

An adjudicatory hearing on the petition was held on 29 October 2009. On 25 November 2009, *nunc pro tunc* 29 October 2009, the district court entered an order adjudicating H.N.D. a neglected juvenile. The trial court found as fact that DSS

previously investigated allegations of abuse, neglect, or dependency at the home of Travis and Nadine Highsmith. That Respondent Mother was present at the home of the Highsmiths on one occasion when [DSS] was present to investigate certain allegations. Respondent Mother also was aware of the large number of children at the home of the Highsmiths as well as the presence of an above-ground pool. That Respondent Mother also uses marijuana and tested positive twice. Respondent Mother has had unstable living arrangements and has resided in five different residences in the past two-three months. Respondent Mother admitted to testing positive for marijuana, once on September 4, 2009, and once on September 29, 2009. Respondent Mother expressed concerns to [DSS] over the Highsmiths. Specifically, Respondent Mother was concerned that there were 10 children in the care of the Highsmiths; that some of the other children were playing rough with Respondent Mother's children; and the children were being left in the care of a 15 year old. That the home of the Highsmiths is a three bedroom mobile home with several pit bulls on the premises. That the above-ground pool did not have a fence or other obstructions to prevent children from accessing it. That the Respondent Mother's other child . . . drowned in the pool at the Highsmith home on August 30, 2009.

Based on this finding, the trial court concluded that H.N.D. was a neglected juvenile. At disposition, the trial court ordered that custody remain with DSS, concluded that the plan for the juvenile should be reunification, and provided for visitation between respondent and the juvenile. Respondent now appeals.

Respondent's sole argument on appeal is that the trial court erred by adjudicating H.N.D. neglected. In an abuse, neglect and dependency case, review is limited to the issue of whether the conclusion of neglect is supported by adequate findings of fact. *In re Helms*, 127 N.C. App. 505, 511, 491 S.E.2d 672, 676 (1997). A "neglected juvenile" is defined in N.C. Gen. Stat. § 7B-101(15) as:

[a] juvenile who does not receive proper care, supervision, or discipline from the juvenile's parent, guardian, custodian, or caretaker; or who has been abandoned; or who is not provided necessary medical care; or who is not provided necessary remedial care; or who lives in an environment injurious to the juvenile's welfare; or who has been placed for care or adoption in violation of law.

**IN RE H.N.D.**

[205 N.C. App. 702 (2010)]

N.C. Gen. Stat. § 7B-101(15) (2009). Section 7B-101(15) affords "the trial court some discretion in determining whether children are at risk for a particular kind of harm given their age and the environment in which they reside." *In re McLean*, 135 N.C. App. 387, 395, 521 S.E.2d 121, 126 (1999) (citation omitted). To sustain an adjudication of neglect, the alleged conditions must cause the juvenile some physical, mental, or emotional impairment, or create a substantial risk of such impairment. *See In re Safriet*, 112 N.C. App. 747, 752, 436 S.E.2d 898, 901-02 (1993).

In the instant case, the trial court made no finding that H.N.D. sustained injury or impairment as a consequence of respondent-mother's failure to provide proper care, supervision, or discipline, or that the juvenile was at risk of injury or impairment. *See In re Anderson*, 151 N.C. App. 94, 97, 564 S.E.2d 599, 602 (2002) ("The trial court's factual findings must be more than a recitation of allegations. They must be the specific ultimate facts . . . sufficient for the appellate court to determine that the judgment is adequately supported by competent evidence.") (quotations and citation omitted). There are cases in which the evidence is so substantial that a finding of substantial risk is not necessary. *See Safriet* at 753, 436 S.E.2d at 902 (citing *Harris v. N.C. Farm Bureau Mutual Ins. Co.*, 91 N.C. App. 147, 150, 370 S.E.2d 700, 702 (1998) ("remand because of inadequate findings of fact unnecessary where facts are disputed"). However, the evidence here is capable of more than one inference; as such, the trial court must make a finding regarding the substantial risk of impairment. We consequently conclude the trial court's findings of fact do not support its conclusion of law that H.N.D. was neglected. Accordingly, we reverse the trial court's adjudication of neglect and remand to the trial court for further proceedings consistent with this opinion.

Reversed and remanded.

Judge HUNTER, JR., Robert N., concurs.

Judge WYNN dissents by separate opinion.

WYNN, Judge, dissenting.

The majority recites the rule that to sustain an adjudication of neglect, the alleged conditions must cause the juvenile some physical, mental, or emotional conditions must cause the juvenile some physical,

impairment, citing *In re Safriet*, 112 N.C. App. 747, 752, 436 S.E.2d 898, 901-02 (1993). Here, the trial court did not make such a finding. The majority holds that in the absence of such a finding, the trial court's order must be reversed.

However, our precedent reveals that the order *affirmed* in *Safriet* contained no such finding either. As we noted in that case, "[a]lthough the trial court failed to make any findings of fact concerning the detrimental effect of Ms. Safriet's improper care on [the juvenile's] physical, mental, or emotional well-being, *all the evidence supports such a finding.*" *Id.* at 753, 436 S.E.2d at 902 (emphasis added).

"A proper review of a trial court's finding of neglect entails a determination of (1) whether the findings of fact are supported by clear and convincing evidence, and (2) whether the legal conclusions are supported by the findings of fact." *In re Gleisner*, 141 N.C. App. 475, 480, 539 S.E.2d 362, 365 (2000) (citations and quotations omitted). Indeed, we defined our standard of review in abuse, neglect, and dependency cases by stating "[o]ur review of a trial court's *conclusions of law* is limited to whether they are supported by the findings of fact." *In re Helms*, 127 N.C. App. 505, 511, 491 S.E.2d 672, 676 (1997) (emphasis added).

In the present case, Respondent argues that the trial court erred in basing its adjudication of neglect *solely* on the fact that Respondent's other child died in her custody. Respondent does not, however, contest the trial court's finding that she tested positive for marijuana use; had unstable living arrangements; and willfully left both of her children in the care of a family (1) that was responsible for supervising ten children, (2) that Respondent knew had been investigated by DSS before, and (3) that owned the unfenced aboveground pool where Respondent's other child drowned. As in *Safriet*, the evidence supports these findings and these findings support the trial court's adjudication of neglect. *See Helms*, 127 N.C. App. at 511-12, 491 S.E.2d at 676 (unstable living arrangements and exposure to dangerous people support adjudication of neglect); *In re Nicholson and Ford*, 114 N.C. App. 91, 94, 440 S.E.2d 852, 854 (1994) (recognizing trial court's discretion in weighing evidence of another child's death as a relevant factor in neglect proceedings).